NOTICE

Decision filed 10/10/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0244

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

MOLLY ALTER,

       Plaintiff-Appellant,

v.

STARBUCKS CORPORATION,

       Defendant-Appellee.

) Appeal from the
) Circuit Court of
) Madison County.
)
) No. 04-L-71
)
) Honorable
) George J. Moran,
) Judge, presiding.

_____

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Molly Alter, filed a tort claim against defendant, Starbucks Corp. (Starbucks), after a cup of hot coffee she had purchased at defendant's store located on the campus of Southern Illinois University Edwardsville (University) collapsed and burned her hands. Starbucks filed a motion to dismiss, arguing that plaintiff's cause of action was actually one against the University due to a "Master Licensing Agreement" (Agreement) between the University and Starbucks, which provides that the University is solely responsible for the maintenance, construction, design, employees, and operation of the Starbucks store located on the University's campus. Starbucks asserted that the trial court lacked subject matter jurisdiction because the case is essentially against the State of Illinois and is required to be heard in the Illinois Court of Claims. The trial court agreed and granted Starbucks' motion to dismiss. Plaintiff now appeals, arguing that the trial court erred in granting Starbucks' motion to dismiss. We reverse and remand.

BACKGROUND

On January 23, 2004, plaintiff, a student at the University, filed suit against Starbucks

1

after she was burned by hot coffee. Plaintiff's initial complaint was amended twice. Two employees of the store were added as defendants, but plaintiff later voluntarily dismissed the employees. On February 23, 2004, plaintiff filed an amended complaint in which she claimed to have sustained injuries on December 3, 2003, after purchasing coffee from the Starbucks located on the University's campus. Plaintiff alleged that the lid on her drink popped off and the coffee cup collapsed in on itself, causing hot coffee to burn both her hands. Plaintiff alleged, *inter alia*, that as a result of this accident, she was forced to take "incompletes" in three of her classes at the University and that the resulting inability to use her hands in the metalsmith program in which she was enrolled put her graduate assistantship in jeopardy and diminished her future earning capacity.

On February 24, 2005, Starbucks filed a motion to dismiss the second amended complaint, and this motion incorporated an earlier motion to dismiss. Starbucks moved to dismiss under section 2-619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2004)). Starbucks alleged that pursuant to the Agreement between the University and Starbucks, the University has the sole responsibility for the operation of the Starbucks store where the coffee was purchased and is responsible for all the claims relating to the operation of the campus Starbucks.

Section 5.15 of the Agreement provides in pertinent part as follows:

"**Responsibility for Starbucks Store.** The parties acknowledge that University has sole responsibility for the maintenance, construction, design, employees, and operation of the Starbucks Store. As such, any claim, liability[,] or demand of any kind or nature, including, without limitation, any settlement offer or court verdict, arising from or relating to the maintenance, construction, design, employees, or operation of the Starbucks Store shall be the sole responsibility of University, and University shall pay for any and all liabilities or damages Starbucks

2

may incur, including reasonable attorneys' fees, as a result of claims, demands, costs, or judgments of any kind or nature, by anyone whomsoever, arising out of or otherwise connected with the maintenance, construction, design, employees, or operation of the Starbucks Store, except to the extent such liability or damage is due to the negligence or fault of Starbucks (it being acknowledged and agreed to by the parties that any claims related to the temperature of coffee beverages sold at the Starbucks Store shall not be attributable to the negligence or fault of Starbucks).

University shall immediately undertake the defense of any legal action against or involving Starbucks, at University's sole expense, and shall retain reputable, competent[,] and experienced counsel reasonably acceptable to Starbucks to represent the interests of Starbucks. *** Starbucks shall have the right to obtain separate counsel, at Starbucks['] expense, and to participate in the defense, compromise[,] or settlement of the action. *** In the event of a legal action against Starbucks, University shall not settle any legal action without the specific prior written consent of Starbucks, which may be granted or withheld in its sole and absolute discretion."

Starbucks asserted that, pursuant to this portion of the Agreement, plaintiff's complaint is actually against the State of Illinois and, thus, can only be brought in the Court of Claims, not the circuit court.

On March 30, 2005, the trial court agreed with Starbucks and granted Starbucks' motion to dismiss, finding that it lacked jurisdiction to hear the case and that the Court of Claims was the proper venue. On April 6, 2005, plaintiff filed a motion to reconsider. On April 14, 2005, the trial court denied plaintiff's motion to reconsider on the basis that the University was the ultimate payer of a claim and that, therefore, plaintiff's cause of action was a claim against the State for damages. Therefore, the trial court ruled that it did not have subject matter jurisdiction and that the claim must be pursued in the Court of Claims.

3

Plaintiff now appeals.

## ANALYSIS

As noted above, this case is before us on a section 2-619 motion to dismiss. A section 2-619 motion presents a question of law, and an appeal taken from the grant of a section 2-619 motion is reviewed *de novo*. *Intergovernmental Risk Management v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.*, 295 Ill. App. 3d 784, 790, 692 N.E.2d 739, 742 (1998). All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. *Bartow v. Ford Motor Co.*, 342 Ill. App. 3d 480, 483, 794 N.E.2d 1027, 1030 (2003). With this in mind, we review the parties' arguments.

Plaintiff contends the trial court erred in granting defendant's motion to dismiss because her action is not a tort claim against the University or the State but is a tort claim against a private corporation, which, as a separate matter, is contractually indemnified by the University. According to plaintiff, the University's only obligation in this matter is derived contractually from the Agreement it voluntarily entered into, so the University is in no way the defendant in this tort action. Plaintiff asserts that if the trial court's decision is allowed to stand, the University will effectively be granted the ability to transfer its immunities and privileges as a part of a sovereign entity to a private corporation. Starbucks responds that the trial court properly found that plaintiff's claim was actually a claim against the State which must be brought in the Court of Claims because the lawsuit is actually a suit against State employees. We agree with plaintiff.

The Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2002)) establishes the Court of Claims and gives it jurisdiction to hear certain matters, including the following:

"All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, *** provided[] that an award for damages in a case sounding in tort *** shall not exceed

4

the sum of $100,000 to or for the benefit of any claimant."  705 ILCS 505/8(d) (West 2002).

Determining whether an action is actually directed against the State depends not upon the formal designation of the parties but, rather, upon an analysis of two factors: (1) the issues involved and (2) the relief sought.  *Healy v. Vaupel*, 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247 (1990); *Currie v. Lao*, 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980 (1992).

In *Currie*, the defendant was an Illinois State trooper who responded to a reported disturbance within the City of Joliet.  As the defendant drove to the location of the disturbance, he got lost and ended up driving the wrong way on a one-way street.  The defendant's vehicle collided with the plaintiff's, and plaintiff filed suit.  A jury returned a verdict in favor of plaintiff and awarded damages.  As in the present case, the defendant argued on appeal that the plaintiff's lawsuit was actually a claim against the State because the defendant was performing the official duties of a State trooper at the time of the accident.  However, the Illinois Supreme Court concluded that the duty the defendant was charged with breaching did not arise out of his employment as a State trooper, but as a result of his status as the driver of an automobile on a public roadway.  *Currie*, 148 Ill. 2d at 161, 592 N.E.2d at 981.

The supreme court rejected the defendant's argument, finding "under the facts of this case that [the defendant] was not performing a uniquely governmental function at the time of the collision."  *Currie*, 148 Ill. 2d at 162, 592 N.E.2d at 981.  In reaching this conclusion, the supreme court distinguished *Campbell v. White*, 207 Ill. App. 3d 541, 566 N.E.2d 47 (1991), in which the defendant was a State law enforcement officer engaged in a high-speed chase of a suspect.  The defendant in *Campbell* was operating his vehicle in a manner in which only a governmental official is authorized to act, whereas the defendant in *Currie* was not operating his vehicle at the time of the crash in a manner uniquely related to his governmental

5

employment. *Currie*, 148 Ill. 2d at 164-65, 592 N.E.2d at 982-83.

The supreme court aptly pointed out as follows:

"A State employee who breaches a duty he owes regardless of his State employment is no more entitled to immunity than is a private individual who breaches that same duty; the mere fact of his State employment should not endow him with heightened protection." *Currie*, 148 Ill. 2d at 160, 592 N.E.2d at 980.

As in *Currie*, the duty that plaintiff alleges was breached here arose independently of any connection with the State.

Plaintiff's second amended complaint alleges as follows:

"In violation of its duty, the Defendant committed the following acts and/or omissions of negligence:

(a)     Provided a cup to the Plaintiff that had been creased and bent[,] compromising its structural integrity;

(b)     Failed to properly check its coffee cups to ensure that it did not serve hot coffee in weakened coffee cups that had been creased or bent;

(c)     Served the coffee in a weakened coffee cup that had been creased or bent;

(d)     Failed to properly place the lid upon the coffee cup[,] knowing that the Plaintiff would be drinking coffee from the lid; and

(e)     Served its coffee at too hot of a temperature as a result of adding boiling water from the steamer."

This is no different from the duty Starbucks owes to any of its patrons in locations other than the store located on the University's campus.

Starbucks has a duty to the general public to provide structurally sound cups, to properly place the lids on the cups, and to serve coffee at a reasonable temperature. The

6

mere fact that the coffee was sold from a Starbucks store located on State property rather than a Starbucks located on private property should not protect Starbucks from liability if plaintiff can show that Starbucks breached its duty. Moreover, Starbucks cannot escape liability merely because the University voluntarily entered into a contract with Starbucks to reimburse and/or indemnify Starbucks in connection with any actions that may be brought against the Starbucks located on the University's campus. In support of our determination, we rely on *Kiersch v. Ogena*, 230 Ill. App. 3d 57, 595 N.E.2d 696 (1992).

In *Kiersch*, a student at Illinois State University (ISU) filed a medical malpractice action against a university-employed physician who had treated her. In holding that sovereign immunity did not shield the State-employed physician from immunity, the *Kiersch* court stated, "[T]he duty plaintiff alleges that defendant breached in this case arose independently of her State employment and is no different than that duty which any physician owes to her patient." *Kiersch*, 230 Ill. App. 3d at 63, 595 N.E.2d at 701. The *Kiersch* court further determined that the fact that ISU provided legal representation and indemnification for its employees did not require that the suit be brought in the Court of Claims. The *Kiersch* court specifically stated as follows:

"We also reject defendant's argument that ISU's provision for legal representation and indemnification of its employees somehow transforms *all suits* against ISU employees in their individual capacities into suits against the State, requiring that such suits be brought in the Court of Claims. In response to this argument, plaintiff correctly points out that defendant confuses *liability* with *indemnity*–that is, defendant tries to equate ISU's decision to indemnify its employees with direct liability of ISU for its employees' negligent conduct. The two are not the same, and the decision of ISU to indemnify its employees does not deprive the circuit courts of subject-matter jurisdiction over claims otherwise properly brought in the

7

circuit court.

In so holding, we note that there is nothing particularly unusual about ISU's policy to provide legal representation and indemnification for its employees in tort cases brought against them personally. The written policy of ISU on this subject, quoted earlier in this opinion, cites the State Employee Indemnification Act (Act) (Ill. Rev. Stat. 1989, ch. 127, par. 1301 *et seq.* [(now see 5 ILCS 350/1 *et seq.* (West 2002))]), which provides, in section 2(a) thereof, for legal representation and indemnification of *every* State employee under circumstances similar to those discussed in the ISU policy. (See Ill. Rev. Stat. 1989, ch. 127, par. 1302(a) [(now see 5 ILCS 350/2(a) (West 2002))].) Yet, section 2(d) of the Act (Ill. Rev. Stat. 1989, ch. 127, par. 1302(d) [(now 5 ILCS 350/2(d) (West 2002))]) speaks of findings made by 'the court or jury,' thereby clearly indicating that the legislature contemplated that actions against State employees for damages, for which the State would be obligated to indemnify the employees under the Act, might be brought in circuit court, as opposed to the Court of Claims. This conclusion follows because the Court of Claims conducts its judicial business without juries. See Ill. Rev. Stat. 1989, ch. 37, par. 439.16 [(now see 705 ILCS 505/16 (West 2002))].

If the State's indemnification of State employees were sufficient by itself (as defendant argues) to deprive the circuit court of subject-matter jurisdiction and to require all tort claims against such employees to be heard in the Court of Claims, then the supreme court's analysis in *Currie*–deciding whether a tort claim against the defendant State trooper should be heard in the Court of Claims–would be utterly pointless. Accordingly, we find defendant's argument regarding indemnity to be without merit." (Emphasis in original.) *Kiersch*, 230 Ill. App. 3d at 63-64, 595 N.E.2d at 701.

Likewise, in the instant case, we disagree with Starbucks' assertion that section 5.15 of the Agreement between the University and Starbucks requires this case to be heard in the Court of Claims.

We agree with plaintiff that the language contained in section 5.15 of the Agreement is an indemnity agreement. Section 5.15 does not transform all the suits filed against the Starbucks store located on the University's campus into lawsuits against the State. We point specifically to the language in this section which provides that Starbucks has the right to obtain separate counsel and participate in the defense of any lawsuit and denies the University the right to settle any claim originating from the operation of the University Starbucks without the prior consent of Starbucks. This language clearly indicates that the Agreement was not intended to make the University liable for all matters arising out of its operation of the Starbucks store. If it was, there would be no reason for Starbucks to obtain separate legal counsel, participate in the defense of any lawsuit, or approve settlements concerning claims originating from the operation of the Starbucks on the University's campus.

Finally, we agree with plaintiff that the trial court's decision as it stands effectively allows the University to transfer its sovereign immunities and privileges to a private corporation. This is unacceptable. Starbucks is the real defendant here, not the University. While the trial court refused to label the Agreement an indemnification agreement, we have no such trouble doing so. After careful consideration, we find that the circuit court is the proper venue for plaintiff's action.

For the foregoing reasons, we reverse the trial court's dismissal of plaintiff's complaint and remand for further proceedings consistent with our opinion.

Reversed; cause remanded.

9

McGLYNN and WELCH, JJ., concur.

NO. 5-05-0244

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| MOLLY ALTER, | ) Appeal from the<br>) Circuit Court of |
| Plaintiff-Appellant, | ) Madison County.<br>) |
| v. | ) No. 04-L-71<br>) |
| STARBUCKS CORPORATION, | ) Honorable<br>) George J. Moran, |
| Defendant-Appellee. | ) Judge, presiding. |

**Opinion Filed**: October 10, 2006

**Justices**: Honorable Richard P. Goldenhersh, J.

Honorable Thomas M. Welch, J.
Honorable Stephen P. McGlynn, J.
Concur

**Attorney for Appellant**: Matthew J. Marlen, Matthew J. Marlen, P.C., 7012 West Main Street, Belleville, IL 62223

**Attorneys for Appellee**: Karen L. Kendall, Brad A. Elward, Heyl, Royster, Voelker & Allen, 124 S.W. Adams Street, Suite 600, Peoria, IL 61602; Kent J. Plotner, Mary Jo Kuca, Heyl, Royster, Voelker & Allen, 103 N. Main Street, Suite 100, Edwardsville, IL 62025