EVELYN STARR *et al.*, Plaintiffs-Appellees, v. JOSEPH WARD, Defendant-Appellant.

Third District    No. 3—96—0569

Opinion filed June 17, 1997.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Paul Racette (argued), Assistant Attorney General, of counsel), for appellant.

Jay H. Janssen (argued), of Janssen, Maher, Wertz & Miller, of Peoria, for appellees.

JUSTICE SLATER delivered the opinion of the court:

The present case arises out of a suit for damages filed by plaintiffs Evelyn and Albert Starr in the circuit court of Tazewell County. The plaintiffs' complaint originally named both Joseph Ward and the Illinois Department of Transportation (IDOT) as defendants, but IDOT was dropped from the suit by an agreement of the parties. Plaintiffs alleged that the defendant, employee and agent of IDOT, was operating a riding mower/tractor vehicle in the center median of Interstate 74 when the mower hit a concrete boulder, causing it to fly across the innermost lane of the interstate and hit the windshield of the plaintiffs' car, causing injury to Evelyn Starr.

The complaint further alleged that defendant was negligent in one or more acts or omissions in that: the mower was not equipped with an adequate guard to prevent debris from flying out from under the mower and causing injuries; defendant failed to make an adequate inspection for objects that could be thrown out from under the mower prior to mowing; defendant mowed with the discharge chute pointed toward the highway when he knew or should have known that the discharge chute could throw objects into the roadway; and defendant drove the mower over a boulder which he should have seen and/or avoided.

Albert Starr also brought a claim of loss of consortium because his wife, Evelyn Starr, was depressed about her appearance and in constant pain from her injuries and, as a result, was unable to devote time and energy to her husband and perform the duties of marriage.

Defendant filed a motion to dismiss the complaint, contending that the circuit court lacked subject matter jurisdiction over this action because sovereign immunity barred the action in circuit court. Additionally, defendant argued that he was immune from liability under the common law doctrine of public officials' immunity because he had been performing an official discretionary duty at the time of the incident. The circuit court denied defendant's motion to dismiss.

Following a bench trial, judgment was entered in favor of Evelyn Starr in the amount of $200,000, and in favor of Albert Starr in the amount of $50,000. In making his findings, the trial court noted that the case turned on an interpretation of section 14.11 of the Employee Safety Code (Safety Code) (Illinois Department of Transportation, Employee Safety Code § 14.11 (19___)). The court concluded that the requirement of the Safety Code to police the area to be mowed prior to the first mowing of the season had not been fulfilled by the defendant.

Defendant appeals from the judgment of the circuit court, contending: (1) that the circuit court lacked subject matter jurisdiction over this matter because it was a tort action against the state over which the Court of Claims had exclusive jurisdiction; (2) that this action was barred because he was entitled to public officials' immunity from liability; (3) that he owed motorists no duty to police on foot the area he was assigned to mow immediately prior to mowing; and (4) that Albert Starr was not entitled to damages for loss of consortium where damages were not proven.

■ Defendant first contends that the circuit court lacked subject matter jurisdiction over this matter because it is a tort action against the State of Illinois over which the Court of Claims has exclusive jurisdiction. Article XIII, section 4, of the Illinois Constitution of 1970 abolished sovereign immunity except as the General Assembly may provide by law. Ill. Const. 1970, art. XIII, § 4. Under this grant of authority, the legislature reinstated sovereign immunity in the circuit courts (745 ILCS 5/1 (West 1994)) but established the Court of Claims and invested it with exclusive jurisdiction to hear "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit." 705 ILCS 505/8(d) (West 1994).

■ The issue is whether plaintiffs' claims against defendant, an employee of the State of Illinois, are in reality claims against the

state such that the Court of Claims has exclusive jurisdiction. Whether an action is a suit against the state or merely an action against an employee for his own individual acts of negligence depends upon the issues involved and the relief sought, rather than the formal designation of the parties. *Healy v. Vaupel*, 133 Ill. 2d 295, 549 N.E.2d 1240 (1990); *Currie v. Lao*, 148 Ill. 2d 151, 592 N.E.2d 977 (1992). In other words, the prohibition against making the state a party cannot be avoided by nominally making an action against an agent of the state when the real claim is against the state. *Healy*, 133 Ill. 2d 295, 549 N.E.2d 1240.

■ The supreme court has clearly instructed that, when determining whether a tort claim arising out of the alleged on-the-job negligence of a state employee is in reality a claim against the state, the proper inquiry is into the source of the duty the employee is charged with breaching in committing the allegedly negligent act. *Currie*, 148 Ill. 2d 151, 592 N.E.2d 977. The supreme court in *Currie* fully explicated this source-of-duty analysis by stating:

"Where the charged act of negligence arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment, sovereign immunity will bar maintenance of the action in circuit court. [Citations.] Conversely, where the employee is charged with breaching a duty imposed on him *independently* of his State employment, sovereign immunity will not attach and a negligence claim may be maintained against him in circuit court. [Citations.] In other words, where an employee of the State, although acting within the scope of his employment, is charged with breaching a duty that arose independently of his State employment, a suit against him will not be shielded by sovereign immunity." (Emphasis in original.) *Currie*, 148 Ill. 2d at 159, 592 N.E.2d at 980.

The court further explained that the rationale behind extending sovereign immunity to state employees in certain situations was to prevent parties from circumventing the state's immunity by filing suit against a state employee rather than the state where such suit would operate to control the actions of the state. *Currie*, 148 Ill. 2d 151, 592 N.E.2d 977.

Therefore, the determination we must make is whether the defendant owed a duty to plaintiffs that existed independently of his employment by the state or whether the duty allegedly breached by the defendant had no existence outside his state employment. *Healy*, 133 Ill. 2d 295, 549 N.E.2d 1240; *Currie*, 148 Ill. 2d 151, 592 N.E.2d 977. In the present case, the trial court found that defendant breached a duty to police the area for debris prior to mowing. We are

presented with two possible sources of this duty. The first source of the duty to police for debris prior to mowing, and that adopted by the trial court, was section 14.11 of the Safety Code. Illinois Department of Transportation, Employee Safety Code § 14.11 (19____). The Safety Code requires policing of the right-of-way at least prior to the first mowing of the season to diminish the throwing of debris by rotary mowers.

Clearly the Safety Code only regulates the conduct of IDOT employees. Only IDOT employees are obligated to be familiar and comply with Safety Code provisions. Therefore, the duty to police the right-of-way prior to the first mowing of the season pursuant to section 14.11 of the Safety Code is one arising solely by virtue of the defendant's employment as an IDOT highway maintainer. Following the rationale set forth by the supreme court in *Currie*, sovereign immunity would bar suit in circuit court.

The second possible source of a duty to inspect stems from common law negligence principles. Plaintiffs contend that defendant's negligence arose from his breach of duty of care in the ordinary operation of the tractor mower. According to plaintiffs, this duty of care encompassed a duty to inspect for debris prior to mowing, which is the same obligation imposed on all operators of mowers to those who may be injured by debris thrown from the mower. As such, plaintiffs take the position that defendant's duties arose independently of his state employment, and, therefore, the protection of sovereign immunity was not available to him.

In support of their position, plaintiffs analogize the instant case to those cases involving on-the-job negligence of state employees arising out of the ordinary operation of motor vehicles. Plaintiffs correctly point out that it is generally recognized that claims based on the negligent operation of an automobile by a state employee are outside the protection of sovereign immunity. *Bartholomew v. Crockett*, 131 Ill. App. 3d 456, 475 N.E.2d 1035 (1985); *Gocheff v. State Community College*, 69 Ill. App. 3d 178, 386 N.E.2d 1141 (1979). This general rule is premised upon the fact that a driver's duty toward others exists independently of his state employment in that negligence arising from the use of a motor vehicle is based on the duty that every driver owes to all other drivers. *Bartholomew*, 131 Ill. App. 3d 456, 475 N.E.2d 1035. Likewise, plaintiffs contend that defendant's negligence arose out of his ordinary operation of a mower and was based on the duty to inspect prior to mowing imposed on all operators of mowers.

■ We first note that the plaintiffs' argument hinges upon the existence of a common law duty owed by all operators of mowers to po-

lice the right-of-way for debris prior to mowing. In order to properly set forth a cause of action for negligence, the plaintiffs must allege the existence of a duty owed by the defendant to plaintiffs, a breach of that duty by the defendant, and an injury to plaintiffs proximately caused by defendant's breach of the duty. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 660 N.E.2d 863 (1995).

There can be no recovery in tort for negligence unless defendant breached a duty owed. "A duty is an obligation to conform to a certain standard of conduct for the protection of another against an unreasonable risk of harm." *O'Hara v. Holy Cross Hospital*, 137 Ill. 2d 332, 337, 561 N.E.2d 18 (1990). In determining whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing the burden on the defendant. *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 582 N.E.2d 108 (1991). The existence of a duty of care is a question of law for the court. *Jackson v. Hilton Hotels Corp.*, 277 Ill. App. 3d 457, 660 N.E.2d 222 (1995).

■ In support of the existence of a duty to inspect, plaintiffs point to several cases in which the operation of a mower gave rise to suits in negligence. See *Dugan v. Sears, Roebuck & Co.*, 113 Ill. App. 3d 740, 454 N.E.2d 64 (1983) (the issue in this products liability case was whether testimony regarding the negligence of the mower operator in failing to comply with the safety manual was a superseding cause preventing the liability of the mower manufacturer); *Wetherell v. Matson*, 52 Ill. App. 3d 314, 367 N.E.2d 472 (1977) (this case involved injuries sustained by a child whose foot was backed over by a riding lawn mower when the operator did not look behind him as he reversed); *Gulledge v. Gulledge*, 51 Ill. App. 3d 972, 367 N.E.2d 429 (1977) (the issue in this case was whether parental immunity shielded grandparents from liability in a personal injury suit arising from injury to their grandchild caused by the ordinary negligence of the grandparents when the child was injured by the blades of the mower). We note however, that none of the cases cited by plaintiffs involved a failure to police an area for debris prior to mowing. While these cases may provide support for the propositions that operators of lawnmowers have an obligation to comply with the provisions in an owner's manual, that operators of lawnmowers have an obligation to look behind them when backing up, and, finally, that grandparents have an obligation to supervise their grandchild when he is in close proximity to a lawnmower, these cases simply do not address the issue of whether an operator of a mower has a duty to inspect an area

for debris prior to mowing. We conclude that these cases do not provide support for the existence of a common law duty to inspect an area for debris prior to mowing.

Nor are we inclined, after having balanced the factors of foreseeability and likelihood of injury caused by the ejection of debris from a mower against the extreme magnitude of the burden placed upon the defendant were he required to inspect the area to be mowed prior to mowing for debris not visible from his position on the tractor prior to mowing, to impose such a duty on the defendant in the instant case.

Further, even were a duty to exist independently of his employment requiring defendant to inspect for debris prior to mowing, it does not automatically follow therefrom that plaintiffs' claims may be brought in circuit court. Instead, the so-called vehicle negligence cases set forth an exception to the general rule that suits alleging the breach of a duty arising independently from an individual's state employment may be brought in circuit court. Namely, where an employee's operation of a vehicle is so unique to his employment that a suit aimed at his negligent driving could act to control the policies and actions of the State, suit is barred in circuit court. *Currie,* 148 Ill. 2d 151, 592 N.E.2d 977; *Campbell v. White,* 207 Ill. App. 3d 541, 566 N.E.2d 47 (1991).

Defendant argues that the instant case is analogous to those cases in which the defendant's manner of driving was so unique to his employment that suits aimed at his negligence would operate to control the activities and policies of the State. See *Campbell,* 207 Ill. App. 3d 541, 566 N.E.2d 47 (officer involved in a high speed chase when an accident occurred was held to be driving in a manner unique to his employment); *Kostopoulos v. Poladian,* 257 Ill. App. 3d 95, 628 N.E.2d 628 (1993) (IDOT employee who parked a backup vehicle behind a road crew was found to be engaged in an activity unique to his employment).

It is undisputed in this case that defendant was acting within the scope of his employment when the incident occurred. Defendant had the responsibility to mow the median, an obligation that was imposed only by virtue of his employment. Specifically, it was a condition of defendant's employment that he mow the median of Interstate 74 on the date of the incident.

Further, plaintiffs did not dispute testimony adduced by the defendant that he performed his duties precisely as instructed by his supervisors. Specifically, it was uncontested that it was not the practice of IDOT's supervisors to require mower operators to get off their tractors and inspect for debris prior to mowing the area to

which they were assigned. Rather, it was IDOT's practice to inspect the roadways for debris once yearly. We conclude that, unlike an ordinary mower operator, defendant was charged with mowing the highway median. Only a state employee would have the responsibility or authority to mow this particular area. The record revealed that defendant was performing his job as instructed by his supervisors in accordance with their interpretation of the Safety Code. As it was not IDOT's practice to require its highway maintainers to dismount their mowers to inspect the area for debris prior to mowing, the policies and activities of the state with regard to its mowing procedures would clearly be affected were plaintiffs permitted to bring suit against one of its employees in circuit court for failure to inspect his assigned area prior to mowing. We therefore conclude that sovereign immunity barred plaintiffs' suit in circuit court. Having determined that the circuit court lacked subject matter jurisdiction in this case, we need not reach the other issues in this case.

For the reasons stated above, the judgment of the circuit court is vacated.

Vacated.

BRESLIN and MICHELA, JJ., concur.