No. 2-09-0772    Filed:  8-11-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DIANNA SHIRLEY, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 08--L--425 |
| | ) | |
| BRUCE HARMON, | ) | Honorable |
| | ) | Robert B. Spence, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Dianna Shirley, brought suit against defendant, Bruce Harmon, following a collision between plaintiff's car and defendant's snowplow.  Arguing that the doctrine of sovereign immunity applied, defendant moved to dismiss the action pursuant to section 2--619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2--619(a)(1) (West 2008)).  The trial court granted defendant's motion to dismiss, and we affirm its decision.

I. BACKGROUND

Plaintiff filed a complaint on July 31, 2008, alleging the following.  On December 1, 2006, she was driving west on Route 72.  Defendant was operating a snowplow and traveling east on the same road.  Defendant "lost control of his vehicle such that his snow plow blade and/or truck struck" plaintiff's vehicle.  Plaintiff alleged that defendant failed to obey various traffic laws, in that he: failed to keep a sufficient lookout; drove his vehicle too fast for conditions; failed to decrease his

speed in order to avoid a collision; failed to safely pass plaintiff; and drove his vehicle with inadequate brakes and in an unsafe condition. Plaintiff also alleged that defendant knew that he was not adequately trained to operate the snowplow.

Defendant moved to dismiss the complaint pursuant to section 2--619(a)(1). He argued that sovereign immunity applied and deprived the trial court of subject matter jurisdiction because at the time of the accident, he was plowing snow pursuant to his job as an Illinois Department of Transportation (IDOT) highway maintainer. Defendant argued that the proper forum for the case was the court of claims.

Defendant attached two affidavits to the motion to dismiss. The first, his own, described his employment with IDOT and further stated the following. During defendant's work shift on December 1, 2006, he was "assigned to clean-up the accumulated, compacted snow and ice along" his permanent route, which included Route 72. At the time of the accident, he was plowing snow on Route 72. The vehicle's strobe light was activated and the plow blade was lowered and engaged. The second affidavit was that of Raymond Sidwell, an IDOT supervisor. The affidavit stated that when the accident occurred, defendant was plowing snow for IDOT, in an IDOT vehicle, and on his assigned route. Both affidavits also stated that plowing snow on state roadways was an activity unique to IDOT highway maintainers.

Plaintiff filed a motion to strike the affidavits, arguing that they improperly contained conclusive legal statements that plowing snow on state roadways was an activity unique to IDOT maintainers. She alternatively argued that sovereign immunity did not apply because defendant breached duties owed by every driver rather than duties unique to his employment.

The trial court denied defendant's motion to dismiss on April 17, 2009, ruling that this court's decision in American Family Insurance Co. v. Seeber, 215 Ill. App. 3d 314 (1991), controlled. Defendant subsequently filed a motion to reconsider with an accompanying memorandum. Relying on Currie v. Lao, 148 Ill. 2d 151 (1992), defendant argued that Seeber was not controlling and was otherwise distinguishable. Plaintiff moved to strike defendant's motion to reconsider as simply rearguing his initial motion to dismiss, and she also sought sanctions. Defendant disputed these assertions. On June 24, 2009, the trial court denied plaintiff's motion for sanctions, granted defendant's motion to reconsider, and dismissed the case with prejudice.

On July 16, 2009, plaintiff filed an "emergency" motion to reconsider. Plaintiff requested that the court vacate its June 24 order, grant her motion to strike defendant's affidavits, and grant her leave to file an amended complaint and affidavit. Plaintiff's proposed amended complaint added the allegation that defendant crossed the center dividing line and went into the westbound lane before striking her vehicle. It also alleged that defendant breached his duty by failing to drive on the correct side of the roadway and yield the right of way to plaintiff. Plaintiff's affidavit stated as follows in relevant part. There was one lane of travel in each direction on Route 72. The snowfall had slowed down significantly or stopped, and it appeared that both lanes of traffic were plowed, with snow remaining only on the shoulder. Defendant was traveling east and "plowing the eastbound shoulder and eastbound roadway." Plaintiff did not observe any warning lights on defendant's vehicle. She moved her vehicle to her right, close to the shoulder, and slowed or stopped. Still, defendant's vehicle and its plow came across the yellow diving line, many feet into the westbound lane, and struck her vehicle.

The trial court denied plaintiff's motion to reconsider. It agreed that some of the paragraphs in defendant's affidavits were conclusory but stated that even if it struck those paragraphs, the affidavits would still be sufficient. Therefore, the trial court declined to rule on plaintiff's motion to strike the affidavits. The trial court stated that the case remained dismissed with prejudice. Plaintiff timely appealed.

## II. ANALYSIS

On appeal, plaintiff argues that the trial court erred in granting defendant's section 2--619(a)(1) motion to dismiss, because the trial court incorrectly determined that sovereign immunity applied and deprived it of subject matter jurisdiction. Section 2--619(a)(1) provides for the involuntary dismissal of an action based on lack of subject matter jurisdiction. 735 ILCS 5/2--619(a)(1) (West 2008). In reviewing the grant of a section 2--619 motion, we must interpret the pleadings and supporting materials in the light most favorable to the plaintiff. Abruzzo v. City of Park Ridge, 231 Ill. 2d 324, 332 (2008). A section 2--619 dismissal resembles the grant of a motion for summary judgment; we must determine whether a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal was proper as a matter of law. Raintree Homes, Inc. v. Village of Long Grove, 209 Ill. 2d 248, 254 (2004). We review de novo the grant or denial of a motion to dismiss under section 2--619(a)(1). Country Mutual Insurance Co. v. D & M Tile, Inc., 394 Ill. App. 3d 729, 735 (2009).

The Illinois Constitution of 1970 abolished sovereign immunity but allowed it to remain as the General Assembly provided by law. Ill. Const. 1970, art. XIII, §4; see Currie, 148 Ill. 2d at 157. Using this authority, the legislature created the State Lawsuit Immunity Act, which provides that the State cannot be made a defendant or other party in court except as provided in the Court of Claims

Act (705 ILCS 505/1 et seq. (West 2008)). 745 ILCS 5/1 (West 2008). The Court of Claims Act gives the court of claims exclusive jurisdiction over particular matters, including all tort claims against the State for damages. 705 ILCS 505/8(d) (West 2008).

Whether an action is against the State does not depend on the formal designation of the parties, because plaintiffs could otherwise circumvent state immunity by naming only state employees as defendants. Brandon v. Bonell, 368 Ill. App. 3d 492, 504 (2006). Rather, whether an action is against the State depends on the issues raised and the relief sought. Currie, 148 Ill. 2d at 158. Regarding the issues raised, an action will be considered against the State where: (1) there are no allegations that a state employee acted beyond the scope of his authority through wrongful acts; (2) the employee did not allegedly breach a duty owed to the public generally independent of his state employment; and (3) the complained-of actions involve matters ordinarily within the employee's normal and official functions with the State. Jinkins v. Lee, 209 Ill. 2d 320, 330 (2004). Regarding the relief sought, "[a]n action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability." Currie, 148 Ill. 2d at 158; see also Jinkins, 209 Ill. 2d at 330.

For the three-pronged "issues" test, the first prong is not disputed here, because plaintiff does not argue that defendant acted beyond the scope of his authority as a highway maintainer. She also does not dispute the third prong, that defendant's actions involved matters ordinarily within defendant's normal and official state functions. Rather, plaintiff contests the second prong and argues that defendant breached a duty that every motorist owes to drive with due care, rather than a duty arising solely out of his employment.

The second prong is analyzed by the "source of duty" test created by the supreme court in Currie. Jinkins, 209 Ill. 2d at 331. Under this test, the court must look at the source of the duty the employee allegedly breached in committing the negligent act. Currie, 148 Ill. 2d at 159. If the alleged negligent act arose out of the employee's breach of a duty that is imposed solely by virtue of his state employment, sovereign immunity will apply and bar the circuit court's jurisdiction. Currie, 148 Ill. 2d at 159. On the other hand, if the employee allegedly breached a duty imposed on him independent of his state employment, sovereign immunity does not apply. Currie, 148 Ill. 2d at 159. The rationale for this distinction is that sovereign immunity serves to prevent the State's immunity from being circumvented in situations where the State is acting through its employee's official actions. Currie, 148 Ill. 2d at 159-60. In contrast, if the employee breaches a duty he owes regardless of his employment, he is not entitled to immunity any more than a private individual who breaches the same duty, and the simple fact that he is a state employee will not provide him with heightened protection. Currie, 148 Ill. 2d at 160.

Allegations that a state employee negligently operated an automobile generally do not fall within the doctrine of sovereign immunity, because "negligence that arises from the ordinary operation of a motor vehicle is based on the breach of the duties every driver owes to every other driver." Currie, 148 Ill. 2d at 160. However, sovereign immunity will apply if the state employee's manner of driving a vehicle is unique to his employment such that a lawsuit alleging negligent driving could serve to control the State's actions and policies. Currie, 148 Ill. 2d at 160. The Currie court cited with approval Campbell v. White, 207 Ill. App. 3d 541 (1991), where the appellate court held that sovereign immunity applied to a police officer who negligently caused the death of a suspect during a high-speed chase. Currie, 148 Ill. 2d at 160. The Currie court stated that the officer

in Campbell was driving a vehicle in a manner in which only a governmental official was authorized to act. Currie, 148 Ill. 2d at 163; see also Kawaguchi v. Gainer, 361 Ill. App. 3d 229, 244 (2005) (sovereign immunity applied where state trooper was dispatched to an emergency and driving in a manner unique to her employment in that it was authorized only for emergency personnel); Postich v. Henrichs, 267 Ill. App. 3d 236, 240-41 (1994) (sovereign immunity applies to cases where a police officer is charged with driving negligently while responding to an emergency; in such situations, the officer may exercise certain driving privileges that do not apply to private citizens and are therefore uniquely related to the officer's employment).

The Currie court contrasted Campbell to the case before it, which also involved a car accident between an officer and a motorist. The state police officer claimed that he was proceeding to a call for assistance outside his jurisdiction, but: there was some doubt about the veracity of his claim; responding to such a municipal call was not part of his normal and official functions; his contention that he was traveling to a scene of an emergency was negated by the fact that he admittedly traveled close to the speed limit; there was testimony that he did not have his flashing lights activated; and any emergency would have diffused by the time he arrived. Currie, 148 Ill. 2d at 162-63. Therefore, the court reasoned that the officer's activity when the accident occurred fell within the routine operation of a motor vehicle on a public street. Currie, 148 Ill. 2d at 163. The court stated that the officer's "manner of operating his vehicle at the time of the collision was not so uniquely related to his employment as a State trooper that he should be immunized for his negligence in carrying it out." Currie, 148 Ill. 2d at 163. The court stated that its conclusion was supported by the plaintiff's allegations that the officer was negligent in driving the wrong way on a one-way street, failing to

maintain a proper lookout, and failing to control his vehicle, which were duties all drivers owed to each other. Currie, 148 Ill. 2d at 163.

While the aforementioned cases involved motor vehicle accidents with police officers, several cases have examined the applicability of sovereign immunity in accidents with IDOT employees. In Seeber, a pre-Currie case that the trial court here relied on in initially denying defendant's motion to dismiss, the defendant was also operating a snowplow. He was traveling east on Route 137, a road that had two lanes in each direction. At the intersection with Butterfield Road, Route 137 also had a westbound left-turn lane. Seeber, 215 Ill. App. 3d at 316. As the defendant approached the intersection, he noticed a disabled car on the median of the west side of the intersection. The car was partially blocking the inner westbound lane of Route 137. The defendant turned left at the intersection, stopped his snowplow part-way through the turn, and reversed the truck in order to park next to the car and create a more visible barricade of the inner westbound lane to approaching westbound traffic. Seeber, 215 Ill. App. 3d at 316. As the defendant was turning through the intersection, he collided with another vehicle that was traveling west. Seeber, 215 Ill. App. 3d at 317. Relying on the principle that claims based on negligent driving are outside the doctrine of sovereign immunity, this court held that jurisdiction was properly in the circuit court. Seeber, 215 Ill. App. 3d at 318, 320.

In Landon v. Jarvis, 255 Ill. App. 3d 439, 441 (1993), the plaintiff collided with an IDOT tow truck that was parked in a lane of traffic. The defendant submitted an affidavit stating that he was an IDOT highway maintainer whose job required him to patrol expressways and assist motorists involved in accidents. He averred that on the day in question, he saw an accident and therefore stopped his tow truck, activated its emergency lights, and exited the truck to investigate. The

plaintiff then rear-ended the truck. Landon, 255 Ill. App. 3d at 443. The appellate court held that sovereign immunity applied. It stated that the plaintiff's negligence claim challenged the nature of the defendant's job, which was to assist stranded motorists on the highway. Also, as the driver of an emergency vehicle, the defendant was permitted to park his truck on the highway, and his actions of stopping and investigating an accident were uniquely related to his employment such that the plaintiff's suit alleging negligent driving could operate to control the State's actions and policies. Landon, 255 Ill. App. 3d at 443. The Landon court stated that unlike the officer in Currie, whose operation of his vehicle was not uniquely related to his position as a state trooper, the "defendant's actions [could not] be divorced from his State employment." Landon, 255 Ill. App. 3d at 446.

In Kostopoulos v. Poladian, 257 Ill. App. 3d 95, 97 (1993), the defendant was an IDOT highway maintenance worker who was, pursuant to his duties, parked in a backup truck behind a crew patching potholes on the highway. The plaintiff collided with the defendant's vehicle. Kostopoulos, 257 Ill. App. 3d at 96. The appellate court held that the defendant had no statutory duty to refrain from parking on the highway, because there was a statutory exemption for persons and vehicles working on the highway. Kostopoulos, 257 Ill. App. 3d at 100. It further held that sovereign immunity applied because driving and stopping a backup truck on the highway were unique to road repair work and the defendant's employment, and a lawsuit aimed at the defendant's negligent driving could operate to control the State's actions and policies, in particular IDOT's policies and procedures relating to road repair work. Kostopoulos, 257 Ill. App. 3d at 101; cf. Lorenz v. Siano, 248 Ill. App. 3d 946, 952-53 (1993) (sovereign immunity did not apply, because IDOT employee was driving front loader to work site and not yet engaged in work, as required to be exempt from traffic laws).

In Starr v. Ward, 289 Ill. App. 3d 299, 300 (1997), an IDOT employee was mowing a highway median when the mower hit a concrete rock, which then flew up and hit the plaintiffs' windshield, causing injury. The appellate court held that sovereign immunity applied because the defendant's obligation to mow the median arose only by virtue of his employment, only state employees would have the responsibility or authority to mow that particular area, and the defendant performed his duty in the manner instructed by his supervisors. Starr, 289 Ill. App. 3d at 305-06. The court also reasoned that allowing the plaintiff to bring a suit for failing to inspect the area before mowing would affect the State's policies and activities regarding mowing procedures. Starr, 289 Ill. App. 3d at 306.

Plaintiff argues as follows. Although defendant was driving his snowplow in the course of his employment, his conduct in striking her car had nothing to do with plowing snow. This was also not a situation where his plow partially entered the opposite lane as he tried to clear the snow. Instead, he veered across the center lane into oncoming traffic and struck plaintiff even though she had pulled over to the side of her lane. Unlike police officers responding to emergency calls, defendant was not doing anything pursuant to a special statutory grant of authority applicable only to snowplow drivers, nor did he have the statutory authority to drive into other traffic lanes or ignore general traffic laws. In other words, defendant was not engaged in a situation that would allow him to be driving on the wrong side of the road or in an unsafe manner. This factor distinguishes the case from Landon and Kostopoulos, where the defendants were statutorily permitted to park on the highway, which would otherwise be an illegal and unsafe driving practice. Defendant's duty to clear snow was separate from his duty to drive with due care. Thus, his conduct breached a duty imposed on him independently of state employment, and under Currie, sovereign immunity does not apply.

Plaintiff further argues that there was evidence that defendant did not have his emergency lights on, in that plaintiff averred that she did not see any. According to plaintiff, the absence of lights would further mean that defendant was not carrying out any uniquely governmental function, because any exemption from traffic laws would depend on complying with emergency regulations. See 625 ILCS 5/11--205(d) (West 2008). Plaintiff argues that the Landon court would not have provided the driver with sovereign immunity if the plaintiff had properly raised an issue of fact as to whether the truck's lights were operating.

Plaintiff notes that defendant argued below that Seeber was distinguishable because that driver left his plowing duties to assist a motorist whereas defendant was still plowing when the accident occurred. Plaintiff maintains that such a distinction is irrelevant because both defendants remained within the scope of their employment at the time of the accidents. Plaintiff contends that defendant similarly abandoned his plowing duties when he veered onto the wrong side of the road, which the law does not permit and which was not part of defendant's job. Plaintiff also argues that defendant could not have been plowing at the moment of the accident, considering her affidavit that the road surface was already clear. According to plaintiff, even if he was plowing at the moment of impact, it is immaterial because there is no special authority that would allow him to drive into oncoming traffic.

Defendant provides the following argument. This case is like Kostopoulos, Landon, and Starr, because at the time of the collision, he had been assigned to plow snow on a state roadway and was actively engaged in plowing. Only an IDOT highway maintainer would have the responsibility and authority to plow snow from a state roadway. The fact that his plow was lowered and engaged at the time of the collision renders Lorenz and Seeber inapposite. Plaintiff's action challenges the

very nature of his job, and as in Landon, his actions cannot be divorced from his state employment. The duties he allegedly breached were not owed to the public generally independent of his state employment, and if the circuit court ultimately entered judgment in plaintiff's favor, it could control state policies and procedures. Particularly, the State could decide to stop or change plowing methods to avoid similar litigation; close highways to the public until plowing was complete, to the public's great inconvenience; or, based on the allegation that he was plowing too fast, the State could reduce the speed of snowplows, resulting in longer delays before routes are cleared.

Defendant argues that, contrary to plaintiff's assertion that his conduct in striking her car had nothing to do with plowing snow, her complaint alleges, at most, that he acted negligently (rather than intentionally) while plowing snow and that his negligence caused him to lose control of the snowplow, which in turn caused the accident. Defendant further argues that, contrary to plaintiff's statement that at the time of the collision he was not acting pursuant to any statutory grant of authority to state snowplow drivers, IDOT has authority over the general supervision of highways constructed with state funds (see 605 ILCS 5/4--101.1 (West 2008)) and the duty to determine the best methods of maintaining highways (see 605 ILCS 5/4--101.5 (West 2008)), which would include removing snow and ice. Defendant argues that IDOT cannot discharge these duties itself but rather must exercise them through its employees.

Regarding plaintiff's argument that defendant was not exempt from traffic laws as the driver of an emergency vehicle, given that he did not have his emergency flashers on, defendant states that he never claimed that a snowplow is an emergency vehicle. He further notes that his affidavit stated that his strobe light was activated, and he argues that plaintiff's statement that she did not observe any lights is insufficient counter evidence. See Hickey v. Huber, 263 Ill. App. 3d 560, 565 (1994)

(witnesses' affidavits stating that they did not notice a green car were insufficient to counter officer's statement that he was pursuing a green car).

We agree with defendant that sovereign immunity applies in this case. The question of flashing lights is a nonissue because defendant does not assert that the use of his flashing lights permitted him to operate the snowplow according to the rules of emergency vehicles. The central question is whether defendant's allegedly negligent acts breached a duty imposed on him solely by his state employment or independent of his state employment. Although plaintiff argues that defendant was not statutorily permitted to drive on the wrong side of the road, this is not a case where defendant is alleged to have intentionally driven on the wrong side of the road, like police officers engaged in high-speed chases. Rather, plaintiff's complaint alleged only negligence. Plaintiff also argues that the law did not permit defendant to veer to the wrong side of the road; but no state employee has the authority to commit a tort, and if sovereign immunity could be defeated by alleging a tort, sovereign immunity for tort actions could not exist. Jackson v. Alverez, 358 Ill. App. 3d 555, 561 (2005). That is, "[b]ecause sovereign immunity presupposes the possibility of a legal wrong by a state employee [citation], and legal wrongs are, per se, unauthorized, the relevant question cannot be whether the employee had authority to commit the legal wrong." Jackson, 358 Ill. App. 3d at 561; see also Welch v. Illinois Supreme Court, 322 Ill. App. 3d 345, 352 (2001) (a state employee's violation of a policy, regulation, or statute does not necessarily prohibit the application of sovereign immunity).

It is undisputed that defendant was plowing snow when the accident occurred,[1] which distinguishes this case from Seeber, where the defendant ceased his plowing duties and attempted to assist with a disabled car. We believe that as in Landon, Kostopoulos, and Starr, plaintiff's suit challenges the very nature of defendant's job, which is to plow snow from state roadways. Had defendant merely been driving the vehicle without the plow blade lowered and engaged, this case would be like Lorenz, where the defendant was driving a front loader to a work site, and sovereign immunity would not apply. Here, in contrast, defendant was plowing snow, and the act of plowing snow is intertwined with, and cannot be divorced from, the act of navigating the snowplow. See Landon, 255 Ill. App. 3d at 446 (sovereign immunity applied where the "defendant's actions [could not] be divorced from his State employment"). Thus, the duty that defendant allegedly breached was to plow state roads in a safe manner, which was a unique duty imposed on him solely by virtue of his state employment. Further, as an independent consideration, we consider the relief sought. See Welch, 322 Ill. App. 3d at 351. Here, a judgment for plaintiff could operate to control the State's actions, specifically IDOT's policies and procedures related to plowing snow, such as the speed or manner in which snow is plowed. See Kostopoulos, 257 Ill. App. 3d at 101 (the plaintiff's suit against the driver of a parked backup truck could operate to control IDOT's policies and procedures relating to road repair work); Starr, 289 Ill. App. 3d at 300 (the plaintiff's suit could affect the State's policies and activities regarding mowing procedures). Accordingly, sovereign immunity applies, and the trial court correctly granted defendant's motion to dismiss for lack of subject matter jurisdiction.

---

[1]Plaintiff's proposed amended complaint and affidavit alleged that defendant was plowing snow on the road's shoulder and eastbound roadway, which still acknowledged that defendant was plowing snow.

III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Kane County circuit court.

Affirmed.

O'MALLEY and SCHOSTOK, JJ., concur.